# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | | |
|---|---|---|
| CLYDE BENNETT, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | CV 512-061 |
| ZURICH AMERICAN INSURANCE | * | |
| COMPANY; GALLAGHER BASSETT | * | |
| SERVICES, Inc.; and SUSAN | * | |
| WESTMORELAND, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## ORDER

Defendants Zurich American Insurance Company and Gallagher Bassett Services filed motions to dismiss. Dkt. Nos. 21, 24. Because those motions concerned matters outside the pleadings, this Court converted those motions into motions for summary judgment. Dkt. No. 45. Defendant Susan Westmoreland also filed a Motion for Summary Judgment. Dkt. No. 48. For the reasons stated below, Defendants' Motions for Summary Judgment are **GRANTED**. Dkt. Nos. 21, 24, 45.

## BACKGROUND

This dispute evolved from a car crash on January 28, 2008. Defendant Westmoreland ran a stop sign and hit Plaintiff

1

AO 72A
(Rev. 8/82)

Bennett. Complaint ¶ 8. Bennett was, at the time, driving a vehicle of his employer, Elixir Industries, and acting within the scope of his employment. Complaint ¶ 9. Bennett was injured in the crash and incurred a substantial amount of medical bills.

Bennett brought suit on March 6, 2009 in the Superior Court of Atkinson County ("First Action"). Complaint ¶ 11. Although at fault for the accident, Westmoreland was underinsured. Bennett, as a result, sought to procure coverage from his employer's insurance company, Zurich American. Bennett's employer's policy contained uninsured/underinsured coverage to protect against losses inflicted by uninsured or underinsured parties. Complaint ¶ 12. While the First Action was pending, Bennett's counsel communicated with Zurich to determine the available coverage for Bennett under the uninsured/underinsured provisions of Bennett's employer's policy. Bennett's counsel also communicated with Gallagher Bassett Service's Inc., Zurich's agent, about the available coverage. Complaint ¶ 19. Gallagher Bassett is a third-party claims handling service. Dkt. No. 60, Ex. A. Bennett believed that Zurich and Gallagher Bassett failed to disclose certain information and misrepresented the available coverage, thereby breaching their duty of good faith. Complaint ¶¶ 20-22.

AO 72A
(Rev. 8/82)

Because of Zurich's conduct, Bennett amended his complaint in the First Action to add a claim against Zurich for "fraudulently creat[ing] the false impression that Plaintiff could not recover under [Zurich's] policy." Dkt. No. 21, Ex. A at 0403. Bennett did not assert any claims against Gallagher Bassett. Dkt. No. 21, Ex. A at 0403. The Superior Court granted Zurich's Motion for Summary Judgment because no admissible evidence existed that Zurich "or someone whose conduct [could] be legally imputed to [Zurich], provided false information relating to either the existence or amount of uninsured motorist coverage." Dkt. No. 7, Ex. 4.

Bennett's claim against Westmoreland in the First Action resolved when the parties reached a consent judgment of $175,000 after the first day of trial. Complaint ¶ 15. Bennett and Westmoreland entered into a limited liability release, which released Westmoreland from all liability "except to the extent other insurance coverage is available which covers the claim or claims of [Bennett] against [Westmoreland]." Dkt. No. 27, Ex. A.

After the conclusion of the First Action, Bennett filed the present action in state court against Westmoreland, Zurich, and Gallagher Bassett. Bennett alleges that Defendants breached their duty of good faith and fair dealing by concealing policy information and by refusing to tender anything more than $50,000

in settlement.  Complaint ¶ 17-23.  Defendants removed the
action to federal court.  Dkt. No. 1.  Bennett filed a Motion to
Remand, Dkt. No. 17, which this Court denied.  See Dkt. No. 43.
This Court held that diversity jurisdiction existed because
Westmoreland was fraudulently joined as a party because the
Complaint did not state a claim against her, Bennett did not
seek damages against her, and Bennett could not possibly recover
from Westmoreland for bad faith concealment of the insurance
limits of Bennett's employer's insurance policy.  Dkt. No. 43.
The case proceeded against all Defendants, who are entitled to
summary judgment as explained below.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary
judgment is appropriate "if the movant shows that there is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  The court must view
the evidence and draw all inferences in the light most favorable
to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144,
157-59 (1970).  The party seeking summary judgment must first
identify grounds that show the absence of a genuine issue of
material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24
(1986).  To discharge this burden, the movant must show the
court that there is an absence of evidence to support the
nonmoving party's case.  Id. at 325.  The burden then shifts to

AO 72A
(Rev. 8/82)

the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

**DISCUSSION**

## I. Claims against Westmoreland

Westmoreland is entitled to summary judgment.  Bennett has failed to articulate a cognizable claim against her, much less present evidence to support that claim.  As discussed in this Court's order denying the motion to remand, Westmoreland cannot be held liable for bad faith concealment of insurance information for a policy that she did not have any information about and was not issued to her.  Dkt. No. 43.

Bennett has suggested that Westmoreland can be held liable because the limited liability release signed by Bennett and Westmoreland in the First Action did not release Westmoreland from liability "to the extent other insurance coverage is available which covers the claim or claims of [Bennett] against [Westmoreland]."  Dkt. No. 27, Ex. A.  That language, however, carves out an area from the release; it does not create the basis of a claim.  Bennett has not presented any discernible way to hold Westmoreland liable for his current claims.

AO 72A
(Rev. 8/82)

## II. Claims against Zurich

Bennett's claim against Zurich is barred by both res judicata and collateral estoppel.  Indeed, this is a textbook example of the application of those doctrines.

When considering whether to give res judicata effect to a state court judgment, federal courts apply the "res judicata principles of the law of the state whose decision is set up as a bar to further litigation."  Green v. Jefferson Cnty. Comm'n, 563 F.3d 1243, 1252 (11th Cir. 2009) (citation omitted); see also David Vincent, Inc. v. Broward Cnty, 200 F.3d 1325, 1331 (11th Cir. 2000).

Under Georgia law, "[t]here are three prerequisites to the application of res judicata: (1) identity of the cause of action; (2) identity of the parties or their privities; and (3) a previous adjudication on the merits by a court of competent jurisdiction."  Smith v. Lockridge, 702 S.E.2d 858, 863 (Ga. 2010); see also O.C.G.A. § 9-12-40.  Here, the allegations in Bennett's Complaint are identical to those he asserted against Zurich in the First Action.  In Bennett's Amended Complaint in the First Action, Bennett claimed that Zurich "fraudulently created the false impression that Plaintiff could not recover under [Zurich's] policy."  Dkt. No. 21, Ex. A at 0403.  In this suit, Bennett claims that Zurich "failed to disclose its policy limits for several years, thereby violating the law of the State

6

of Georgia" and that Zurich breached its duty of good faith and fair dealings by refusing "to tender an amount in excess of $50,000.00" to Bennett. Complaint ¶¶ 14, 20. Despite the slight rewording, both suits concerned a cause of action based on Zurich allegedly concealing and misrepresenting information about the availability of uninsured/underinsured Motorist coverage under Elixir's policy.

Additionally, Bennett does not contend that, after summary judgment was granted by the Superior Court of Atkinson County in the First Action, Zurich American or Gallagher Bassett took further steps to conceal insurance information. Attached to his Complaint in this action, Bennett submitted a timeline of all communications between Bennett's counsel and either Zurich American or Gallagher Bassett regarding the available insurance coverage. Dkt. No. 58, Ex. 8. The last listed communication occurred on November 9, 2009. Dkt. No. 58, Ex. 8. The summary judgment order in the First Action, however, was entered May 14, 2011. Thus, in the present suit, Bennett is not seeking compensation for anything that occurred after judgment was entered for Zurich American in the First Action. In sum, the first requirement of res judicata is clearly satisfied because this suit concerns the same cause of action.

AO 72A
(Rev. 8/82)

The second requirement is likewise satisfied because Bennett asserted a claim against Zurich in the First Action and again named Zurich as a defendant in this action.

The final requirement is met because the First Action was decided on the merits by a court of competent jurisdiction. The Superior Court granted Zurich's Motion for Summary Judgment and stated there was no evidence that Zurich, or its agent, "provided false information relating to either the existence or amount of uninsured motorist coverage." Dkt. No. 7, Ex. 4. Clearly, the Summary Judgment Order constitutes an adjudication on the merits. See Smith, 702 S.E.2d 858, 863 ("[T]rial court's grant of summary judgment plainly constitutes an adjudication on the merits by a court of competent jurisdiction."). No party has made any suggestion that the Superior Court of Atkinson County did not have competent jurisdiction over the First Action. Bennett is attempting to relitigate a claim against Zurich that he already litigated and lost. As such, Bennett's attempted "second bite at the apple" is barred by res judicata.

Collateral estoppel, also known as issue preclusion, bars Bennett's present claims against Zurich as well. "The doctrine of collateral estoppel precludes the readjudication of an issue of law or fact already adjudicated between the parties or their privies, where that issue is essential to the judgment." Austin v. Cohen, 602 S.E.2d 146, 150 (Ga. Ct. App. 2004) (citation

8

omitted).  "Although Georgia law has not settled on a canonical
list of elements to establish collateral estoppel, Georgia case
law can be distilled into the following formulation:  A party
seeking to assert collateral estoppel under Georgia law must
demonstrate that (1) an identical issue, (2) between identical
parties, (3) was actually litigated and (4) necessarily decided,
(5) on the merits, (6) in a final judgment, (7) by a court of
competent jurisdiction."  Comty. State Bank v. Strong, 651 F.3d
1241, 1264 (11th Cir. 2011).  These elements are the same as the
elements for res judicata, except that instead of requiring an
identical cause of action, collateral estoppel requires an
identical issue.  Id. (emphasis deleted)

Here, all of these requirements are met for collateral
estoppel.  Elements two through seven are satisfied as discussed
above.  Element one is satisfied because the issue of whether
Zurich, or its agents, withheld information or misrepresented
the extent of available coverage was litigated and decided on
the merits in the First Action.  Bennett cannot relitigate that
issue again.

## III. Claims Against Gallagher Bassett

The application of res judicata and collateral estoppel to
the claim against Gallagher Bassett is made more complicated
because Bennett did not name Gallagher Bassett as a defendant in
the First Action.  Gallagher Bassett's relationship with Zurich

AO 72A
(Rev. 8/82)

is that Gallagher Bassett was Zurich's agent.  Complaint ¶ 19.
Zurich instructed Bennett to communicate with Gallagher Bassett
because Gallagher Bassett "was charged by Zurich with handling
Plaintiff's claim."  Complaint ¶ 3; see also Dkt. No. 51, Ex. D.

Both res judicata and collateral estoppel require that the
first suit involve the same parties or their privities.  Thus,
for both res judicata and collateral estoppel, Gallagher Bassett
must establish that it was in privity with Zurich.[1]

"An agency or master-servant relationship does not [by
itself] constitute privity for purposes of res judicata or
estoppel by judgment."  Allen v. King Plow Co., 490 S.E.2d 457,
460 (Ga. Ct. App. 1997) (alterations and citations omitted).
Additionally, as a general rule, an agent or employee is not in
privity with its principal or employer.  See Sorrels Const. Co.,
Inc. v. Chandler Armentrout & Roebuck, P.C., 447 S.E.2d 101, 103
(Ga. Ct. App. 1994).  However, in situations of vicarious
liability, Georgia courts have held that an agent/employee is in
privity with its principal/employer if there are no defenses
available to the principal/employer that would not be available

---

[1] Unlike federal law, Georgia has not adopted the more "modern"
approach of allowing non-mutual defensive collateral estoppel.
Wickliffe v. Wickliffe Co., Inc., 489 S.E.2d 153, 156 (Ga. Ct. App.
1997) (noting that the Supreme Court of Georgia has not yet adopted
the modern trend of loosening the mutuality of parties requirement);
see also Johnson v. United States, 576 F.2d 606, 609 (5th Cir. 1978)
("[Georgia] courts, unlike the federal courts, have retained the
requirement of mutuality in applying principles of res judicata and
collateral estoppel).

AO 72A
(Rev. 8/82)

to the agent/employee.  See Hodo v. Basa, 449 S.E.2d 523, 525 (Ga. Ct. App. 1994); Brinson v. First Am. Bank of Ga., 409 S.E.2d 50, 53 (Ga. Ct. App. 1991); McNeal v. Webber, Jackson, Curtis, Inc., 293 S.E.2d 331, 332-33 (Ga. 1982).  However, the Georgia Court of Appeals in a 1996 opinion limited the application of that exception to the general rule to claim preclusion only, stating that it does not apply to res judicata. See Garrett v. Life Ins. Co of Ga., 471 S.E.2d 262, 265 (Ga. Ct. App. 1996) ("McNeal exception applies only in cases involving collateral estoppel"); but see Hodo, 449 S.E.2d 523, 525 (holding that action against master is "res judicata" in subsequent action against servant); Brinson, 409 S.E.2d at 53 (same).

Gallagher Bassett comes within the exception to the general rule, and therefore should be held to be in privity with Zurich for purposes of collateral estoppel.  In the First Action, Zurich's liability was clearly predicated in part on the actions of Gallagher Bassett and the Superior Court of Atkinson County rejected that claim stating that there was no evidence that Zurich, "or someone whose conduct [could] be legally imputed to [Zurich], provided false information relating to either the existence or amount of uninsured motorist coverage."  Dkt. No. 7, Ex. 4 (emphasis added).  Zurich did not raise any defenses in the First Action that would be unavailable to Gallagher Bassett.

AO 72A
(Rev. 8/82)

For example, Zurich did not assert that Gallagher Bassett exceeded its agency authority, which would be a defense Gallagher Bassett could not assert.  The defenses Zurich raised in the First Action were that (1) O.C.G.A. § 33-3-28 did not create a cause of action, (2) no evidence existed that either Zurich or Gallagher Bassett misrepresented information to Bennett, and (3) no evidence existed that Bennett suffered any damages.  Dkt. No. 21, Ex. A at 0268-0279.  All of those defenses are also available to Gallagher Bassett in defending this action.  Thus, under Georgia law, Gallagher Bassett is in privity with Zurich and therefore the issues raised in the First Action have a preclusive effect.  Whether Gallagher Bassett made false representations about the existence or amount of coverage was an issue litigated and decided on the merits in the First Action.  Bennett, therefore, cannot relitigate that issue.

**IV. Assignment from Westmoreland**

Bennett's response to Zurich and Gallagher Bassett's motions is that his claim did not accrue until after the First Action because Bennett is asserting a claim it acquired through an assignment from Westmoreland.  See Dkt. No. 30.  Bennett alleges that it is "standing in Westmoreland's shoes" and asserting Westmoreland's claim.  See Dkt. No. 30.

This argument is unavailing.  Zurich was not Westmoreland's insurance company.  Elixir Industries, Bennett's employer, was

AO 72A
(Rev. 8/82)

the insured under the policy. Westmoreland had no claim against Zurich or Gallagher Bassett to assign because Georgia Courts have repeatedly held that an uninsured/underinsured motorist cannot bring suit against another parties' insurance company regarding uninsured/underinsured motorist coverage. See Nationwide Mutual Ins. Co. v. Turner, 218 S.E.2d 276, 277 (Ga. Ct. App. 1975) (third-party uninsured motorist may not maintain action against other insured motorist's liability insurer as there is no fiduciary relationship or privity of contract between the two); see also Jones v. Southern Home Insurance Co., 217 S.E.2d 620, 623 (Ga. Ct. App. 1975) (holding that, under Georgia's uninsured motorist statute, insurer had legal right to file defensive pleadings and that doing so did not make the uninsured motorist an "insured" under the policy and that insurer could not be held liable for bad faith in refusing to increase its settlement offer).

## CONCLUSION

For the reasons stated above, Defendants' Motions for Summary Judgment are **GRANTED**. Dkt. Nos. 21, 24, 45. The Clerk of Court is directed to enter the appropriate judgment and close the case.

AO 72A
(Rev. 8/82)

13

**SO ORDERED,** this 17th day of June, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)

14